UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KERRY HOWARD,**<br><br>  Plaintiff,<br><br>  v.<br><br>**JOHN F. KERRY, in his official capacity as United States Secretary of State,**<br><br>  Defendant. | Civil Action No. 14-727 (JDB) |

## MEMORANDUM OPINION

Kerry Howard, a former Community Liaison Officer at the American consulate in Naples, did not enjoy her working environment. That is an understatement, to be fair: she refers to it as a "cesspool." Pl.'s Opp'n [ECF No. 21] at 3. In this suit, Howard asserts that she suffered from a hostile work environment that was discriminatory to women, and from discrete instances of retaliation for her attempts to aid fellow employees. But these claims do not match precisely with those she raised during the administrative process. As a result, some must be dismissed, based on the defendant's motion to do so.

## BACKGROUND

The following facts are taken from Howard's amended complaint and are assumed to be true. See Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc., 52 F.3d 373, 375 (D.C. Cir. 1995). Howard served as a Community Liaison Officer in the Naples consulate from February 2010 to May 2012. Am. Compl. [ECF No. 6] ¶ 3. Her duties included working with consulate staff and their families "to maintain morale," help them adjust to the new cultural environment, and "serve as a resource and advocate." Id. ¶ 4.

Howard describes a generally repressive environment at the consulate. In his first address to consulate staff, Consul General Donald Moore stated: "If you try to bring me down, I will bring you down first." Id. ¶ 29. Moore was perhaps referring to his alleged practice of allowing "young women dressed as prostitutes" access through secure passages during work hours. Id. ¶ 44 (internal quotation marks omitted). Indeed, Howard points to descriptions of Moore as "running the US consulate as the largest house of prostitution in southern Italy," of which he allegedly was the only customer. Id. ¶ 62. Moore explained to staff that "he used women for 'sexercise,'" id. ¶ 68, and that they "are like candy, . . . meant to be eaten and then thrown away," id. ¶ 69 (internal quotation marks omitted).

Howard's personal troubles seem to stem from her advocacy on behalf of an unnamed foreign service officer and his wife. Id. ¶ 6. Howard had worked with them since their arrival in 2011, and "assisted them in their equal employment opportunity complaints" to the State Department and the American embassy in Rome. Id. ¶ 18. In particular, Howard's "disclosing the facts on the ground" to officers from the embassy resulted in the transfer of Naples consulate management officer Pamela Caplis, id. ¶ 19—who had been quite supportive of Moore, id. ¶ 21. Howard also informed the embassy of the poor morale at the consulate, which she attributed to Moore's sexual relationship with a language instructor. Id. ¶ 22.

Howard alleges—in vague terms—that Moore responded to her advocacy by "deliberately ma[king] expedited efforts to make [her] working conditions become so intolerable that [she] had no other choice but to quit." Id. ¶ 9; see also id. ¶ 76. She claims that in an April 2012 meeting, Moore "excoriated" her. Id. ¶ 9. And on May 11, 14, and 15, 2012, Moore directed Howard to come to his private office, where he double-locked the door and "bec[a]me verbally abusive," projecting spittle into her face as he explained that "as a woman, [she] was unable to do anything." Id. ¶ 14; see also ¶¶ 47–58. Or, he would simply miss meetings, making

2

her wait for "extended periods of time." Id. ¶¶ 42–43.  More specifically, Howard alleges that, on April 19, 2012, Caplis gave her an unsatisfactory performance review, a drop from her prior excellent rating.  Id. ¶ 32.  And on that same day, Moore placed Howard on a personal improvement program (better known as a performance improvement plan, or PIP), id. ¶ 33, which Howard considers the first step towards termination, id. ¶ 36.

According to her complaint, Howard first contacted human resources about these issues on May 7, 2012, and was told that she should discuss her concerns with her supervisor.  Id. ¶ 63.  The complaint states that Howard contacted an Equal Employment Opportunity counselor on July 2.  But since then, the parties have agreed that Howard requested an EEO counselor—citing her performance improvement plan as retaliation—on May 7 after all.  See Pl.'s Supp. [ECF No. 22] at 2; Def.'s Resp. [ECF No. 23] at 3.

On August 30, 2012, the State Department's Office of Civil Rights accepted for investigation from Howard the following:

> Complainant alleged she was retaliated against when from February 2011 to May 2012 she was subjected to a hostile work environment characterized by, but not limited to, acts of exclusion, humiliation[,] and false allegations that ultimately led to her constructive discharge on May 19, 2012.

Id. ¶ 65.  The agency subsequently found that Howard could not prevail.  See Final Agency Decision [ECF No. 13-3] at 30.  Within three months, Howard filed suit in this court.  See Compl. [ECF No. 1].  Her amended complaint, filed shortly thereafter, raises two claims under Title VII: retaliation and hostile work environment based on sex discrimination.  Defendant has moved to dismiss Howard's claims or, in the alternative, for summary judgment, on the basis of exhaustion.

**LEGAL STANDARD**

"Title VII's exhaustion requirement, though mandatory, is not jurisdictional." Bell v. Donley, 724 F. Supp. 2d 1, 6 (D.D.C. 2010) (internal quotation marks omitted). "A motion to dismiss for failure to exhaust administrative remedies, then, is properly considered pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." Id. at 7. A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." Lewis v. Dist. of Columbia, 535 F. Supp. 2d 1, 8 (D.D.C. 2008). To pass the test, "the plaintiff must allege a plausible entitlement to relief, by setting forth any set of facts consistent with the allegations." Id. at 9 (internal quotation marks and citation omitted); see also Brown v. Sessoms, 774 F.3d 1016, 1020 (D.C. Cir. 2014) ("[A] plaintiff must identify 'factual allegations' that 'raise a right to relief above the speculative level.'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))). At this stage, the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor." Sissel v. U.S. Dep't of Health and Human Servs., 760 F.3d 1, 4 (D.C. Cir. 2014). But the Court need not accept the plaintiff's legal conclusions. Id.

"In ruling on a motion to dismiss, a court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which it may take judicial notice." Laughlin v. Holder, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (internal quotation marks, citation, and alteration omitted). "In this case, the Court has considered [Howard's] formal administrative complaint . . . ." Id. This document is "integral to [Howard's] exhaustion of administrative remedies, and [is a] public record[] subject to judicial notice; hence, [it] may be considered without converting defendant's motion into one for summary judgment." Id.

**ANALYSIS**

Title VII plaintiffs must timely exhaust their administrative remedies before suing in federal court. Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010). This requires two steps. Prospective plaintiffs must first initiate contact with an EEO counselor within forty-five days of the alleged discriminatory action, or for a personnel action, within forty-five days of its effective date. 29 C.F.R. § 1614.105(a)(1). If that informal counseling proves unsuccessful, the plaintiff must file a formal complaint with the agency that allegedly discriminated against her. Id. § 1614.106(a).

The first step—informal counseling within forty-five days—is an important one: "[A] court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling." Steele v. Schafer, 535 F.3d 689, 693 (D.C. Cir. 2008). But the exact contours of that rule have not been fully determined in this Circuit. It used to be settled that "[a] Title VII lawsuit following the EEOC charge [wa]s limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations," Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotations and citation omitted)—thus affording some consideration to claims that were not, themselves, precisely exhausted.

Since then, however, the Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). That is, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. But it is unclear how broadly Morgan's holding cuts—and whether, for instance, that holding requires that discrete discriminatory acts alleged in timely filed charges must also have—individually—been submitted for a prior (and timely) discussion with an EEO counselor. See Payne, 619 F.3d at 65

5

("We need not decide whether Morgan did in fact overtake that line of cases [allowing employees to litigate unfiled claims that are like or reasonably related to those they did file] . . . ."); see also, e.g., Rashad v. Wash. Metro. Area Transit Auth., 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (noting split among district courts in this Circuit, but commenting that most have found Morgan controlling); Wade v. Dist. of Columbia, 780 F. Supp. 2d 1, 14 (D.D.C. 2011) (noting split). But see Woodruff v. Peters, 482 F.3d 521, 527 (D.C. Cir. 2007) ("As [plaintiff] contacted his [EEO] Counselor regarding that memo [three days after receipt, given the forty-five day limit], this portion of [his] discrimination claim is not time-barred."); Bell, 724 F. Supp. 2d at 10 (dismissing claims for failure to initiate contact with EEO counselor within forty-five days).

Here, Howard filed administrative charges alleging only two discrete retaliatory acts: her poor evaluation on April 19, 2012, and being placed on a performance improvement plan that same day. See Notice of Dismissed Allegations [ECF No. 13-2] at 5. Both were dismissed administratively for failure to contact an EEO counselor within forty-five days, as required by the first step of the exhaustion process. See id. Since then, however, it has become clear to both parties that Howard did timely request an EEO counselor on May 7, 2012—regarding her performance improvement plan. See Pl.'s Supp. at 2; Def.'s Resp. at 3. This claim was therefore appropriately exhausted. The Court will accordingly deny defendant's motion to dismiss as to the retaliation claim regarding that performance improvement plan.[1]

---

[1] The government argues that Howard "failed timely to present this evidence" of the e-mails requesting an EEO counselor in response to the government's motion to dismiss. Def.'s Resp. at 3–4. As a result, it contends, "she has conceded the argument." Id. at 4. It is true that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (emphasis added) (citation omitted). But "[t]he District of Columbia Circuit has stated that the discretion to enforce [that rule] lies wholly with the district court." Id. (internal quotation marks and citation omitted). Given that both parties agree to the facts as now presented, and given that the government has had an adequate opportunity to respond, the Court will exercise its discretion here to find that no concession has been made. (cont.)

More difficult to discern is whether the same should hold true for Howard's retaliation claim regarding her bad performance review. This claim was presented in the formal complaint, but there is no evidence that Howard brought it to an EEO counselor within forty-five days. Under a strict reading of Morgan, the claim was not exhausted and hence must be dismissed. But under the Park standard—to the extent it still applies—the performance review is reasonably related to the performance improvement plan. Both occurred on the same day, and the performance improvement plan is necessarily predicated on a finding of, quite simply, bad performance. Thus, for this claim, the question of exhaustion might well turn on the scope of Morgan's application.

Still, the Court need not decide that issue today, because this retaliation claim would fail on the merits in any event. "To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012). The second requirement—an adverse action—requires that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v White, 548 U.S. 53, 57 (2006). This test "cannot immunize th[e] employee," however, "from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. at 68.

A low performance review, such as Howard received here, "typically constitute[s] adverse action[] only when attached to financial harms"—which are not alleged here. Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008); see also Taylor v. Solis, 571 F.3d 1313,

---

The government further requests that it be granted summary judgment on this claim. As the parties have not adequately briefed that issue on the merits, the Court will deny that motion without prejudice.

1321 (D.C. Cir. 2009) (Plaintiff's "bare, conclusory allegation that she was denied promotional and bonus opportunities" as a result of her employer's retaliation "does not discharge her burden to show the evaluations were attached to financial harms." (internal quotation marks and citation omitted)).  Because "there is no allegation that the rating caused [Howard] to miss out on a bonus, salary increase, or promotion," and because "she has not plausibly alleged facts indicating that the . . . performance evaluation hindered her professional opportunities," that retaliation claim must fail.  Turner v. U.S. Capitol Police Bd., 983 F. Supp. 2d 98, 107 (D.D.C. 2013); see also Moran v. U.S. Capitol Police Bd., 820 F. Supp. 2d 48, 57 (D.D.C. 2011) (finding that plaintiff has not sufficiently alleged "materially adverse" action where she "has not alleged that she suffered losses in pay, promotion, or reassignment of duties, or that she faced any other tangible job consequences" as a result of low performance evaluations).

And, to the extent that Howard alleges as discrete retaliatory acts the meetings where Moore yelled at her in an intimidating fashion, such claims would fare no better.  See Baloch, 550 F.3d at 1199 (finding that "alleged profanity-laden yelling . . . did not meet the requisite level of regularity or severity to constitute material adversity for purposes of a retaliation claim").  Odious the allegations may be—but Title VII "does not set forth a general civility code for the American workplace."  Burlington, 548 U.S. at 68 (internal quotation marks and citations omitted) (citing precedent that courts "must filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language" (internal quotation marks omitted)).  Thus, the Court will grant the government's motion to dismiss the remainder of Count I.

More straightforward is the government's assertion that Howard failed to exhaust her hostile work environment claim.  In the hostile work environment context—as opposed to discrete instances of retaliation—it is settled that claims "like or reasonably related to the

allegations of the administrative charge may be pursued in a Title VII civil action, notwithstanding the failure to otherwise exhaust administrative remedies." Bell, 724 F. Supp. 2d at 8 (internal quotation marks, citation, and alteration omitted); see also Morgan, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts."). "A new claim is 'like or reasonably related' to the original claim if it 'could have reasonably been expected to grow out of the original complaint.'" Bell, 724 F. Supp. 2d at 8–9 (quoting Weber v. Battista, 494 F.3d 179, 183 (D.C. Cir. 2007)).

"Claims of ideologically distinct categories of discrimination and retaliation, however, are not 'related' simply because they arise out of the same incident." Id. at 9 (internal quotation marks omitted). As this Court has pointed out before, "[t]he EEOC charge form makes it easy for an employee to identify the nature of the alleged wrongdoing by simply checking the labeled boxes that are provided. When an employee is uncertain which type of discrimination has occurred, she need only describe it in the text of the charge form." Williams v. Spencer, 883 F. Supp. 2d 165, 174 (D.D.C. 2012) (internal quotation marks and citation omitted). In Howard's formal complaint, she checked the box for reprisal—not for sex discrimination. See Formal Compl. of Discrimination [ECF No. 13-1] at 2. And the explanation she attached to the form similarly focuses on reprisal alone. See id. at 3–4. Thus, "[t]o the extent that [Howard] is attempting to claim that [the hostile work environment] was discriminatory based on [sex], as opposed to retaliatory, [the government] is correct that [Howard] did not exhaust her administrative remedies." Williams, 883 F. Supp. 2d at 174. As a result, the Court will grant the government's motion to dismiss as to Count II (hostile work environment based on discrimination).

## **CONCLUSION**

For the reasons set forth above, Kerry's motion to dismiss is granted in part and denied in part. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 30, 2015